**DURKIN, Secretary of Labor v. SANTIAM LUMBER CO.**

**Civ. A. No. 6895.**

United States District Court
D. Oregon.

Aug. 27, 1953.

Kenneth C. Robertson and Clyde D. Bird, Jr., Associate Atty., U. S. Department of Labor, San Francisco, Cal., for plaintiff.

King, Miller, Anderson and Nash & Yerke, Portland, Or. (Grant Anderson

and John W. Hill, Portland, Or., of counsel), for defendant.

SOLOMON, District Judge.

Plaintiff seeks to enjoin defendant from violating the provisions of §§ 15(a)(1), 15(a) (2), and 15(a) (5) of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. § 201 et seq., hereinafter referred to as the "Act."

Defendant is engaged in the lumber manufacturing business and operates two mills, one at Sweet Home and the other at Lebanon, Oregon. At these mills, it manufactures logs into lumber, most of which is shipped in interstate commerce. In order to supply such mills with logs, defendant leases trucks to haul its logs from various logging operations to such mills.

From 35 to 50 trucks are leased from the Stokes Trucking Company, an independent trucking concern. The lease agreement with Stokes provides for payment on the basis of an agreed rate per thousand feet of logs hauled per mile by such equipment. The drivers of such trucks are carried on defendant's payroll as its employees and are paid rates fixed in accordance with a collective bargaining agreement with the appropriate union. The wages so paid, as well as other related charges, are deducted from the gross rental of the trucks.

During the period from January 25, 1950, to April 1, 1953, defendant also leased trucks from owner-drivers at the same rental and upon the same terms as defendant leased trucks from Stokes. In the owner-driver lease agreements, just as in the Stokes lease agreement, the drivers, whether owners or not, were carried on the books of the defendant as employees and were paid the going rates for regular as well as overtime compensation. These amounts were deducted from the gross rental.

This case appears to be one of first impression. Neither the court nor the litigants have found any reported decision involving a similar arrangement.

An appraisal of the business and economic factors involved is necessary for a proper determination of this case. In the operation of expensive equipment, such as a truck with trailer or semi-trailer for the hauling of logs, the per hour cost usually varies inversely with the number of hours worked. In many contracts for the rental, on an hourly basis, of equipment without operator or maintenance, the rate per hour is reduced after the equipment is operated a specified number of hours per week or month. The hours so specified are usually related to a one-shift operation. Log hauling equipment is often operated on a two-shift basis, and other types of heavy equipment are often operated on a three-shift basis. Whether owned or leased, the major portion of the overhead costs are usually chargeable to the normal work week. Therefore, even though labor costs may increase by 50 percent during the period in which the equipment is operated in excess of the normal work week, the total hourly costs will sharply drop after the first 40 hours, and the net profit will increase for such overtime period, assuming the same rental per hour for both periods. This is true because the per unit operating costs fall at the very point where the direct labor costs begin to rise but, since the increased labor costs constitute only a small portion of the total cost of operation, it is equally profitable, if not more profitable, to operate the additional hours.

Plaintiff does not contend that the lease agreement between defendant and Stokes was anything other than an arm's length transaction entered into by two parties each capable of protecting its own interests. The validity of such agreement under the Act is conceded.

However, plaintiff contends that an identical agreement, when involving a truck operated by its owner, violates the Act because the hours worked by the owner in his capacity as a driver do not affect the compensation received by him, inasmuch as his wages are deducted from the rental payment.

In making such contention, plaintiff overlooks the fact that the driver-owner

of log hauling equipment occupies a dual role. He is both an entrepreneur owning capital equipment and a laborer operating such equipment. As an entrepreneur he reaps the same additional benefits as Stokes when his equipment is operated in excess of 40 hours a week. Therefore, like Stokes, he is in a position to pay, either to himself or to some other driver, the higher overtime rate because he is reaping a larger profit from the operation of his equipment during such overtime periods.

Regardless of the bookkeeping methods used, the owner-driver's net return for his joint activities as an entrepreneur and as a laborer increase during the hours which he and his equipment work after the normal work week.

The case of Walling v. Youngerman-Reynolds Hardwood Co., 1945, 325 U.S. 419, 65 S.Ct. 1242, 89 L.Ed. 1705, upon which plaintiff relies, does not involve a situation in which a laborer has a capital investment. It merely involved a dual rate for labor. I therefore find that the defendant's agreement with owner-drivers of trucks does not violate the Act.

Attorneys for defendant shall prepare findings of fact, conclusions of law and a judgment for defendant in accordance with this opinion.