Arthur J. GOLDBERG, Secretary of Labor, United States Department of Labor

v.

MAINE ASPHALT ROAD CORPORATION

Arthur J. GOLDBERG, Secretary of Labor, United States Department of Labor

v.

T. S. PINKHAM, INC.

Arthur J. GOLDBERG, Secretary of Labor, United States Department of Labor

v.

GREAT NORTHERN PAPER COMPANY.

Civ. No. 7–55.

United States District Court
D. Maine, S. D.

Civ. Nos. 1363, 1364.

United States District Court
D. Maine, N. D.

July 9, 1962.

Thomas L. Thistle, Regional Atty., Albert H. Ross, Asst. Regional Atty., U.

S. Dept. of Labor, Boston, Mass., for plaintiff.

Mitchell & Ballou, Bangor, Me., for defendant Maine Asphalt Road Corp.

Fred C. Scribner, Jr., Horace A. Hildreth, Jr., Portland, Me., for defendants T. S. Pinkham, Inc., and Great Northern Paper Co.

GIGNOUX, District Judge.

These three cases present the same question, and therefore are considered together. Each is an action brought under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. § 201 et seq., to enjoin violation of the overtime and record-keeping provisions of the Act. 29 U.S.C.A. §§ 207, 211(c), 215(a) (1), (2) and (5), 217. Plaintiff also seeks the restraint of any withholding of payment of overtime compensation found by the Court to be due to employees under the Act. 29 U.S.C.A. § 217.

The parties are in agreement that during all periods material to these proceedings the persons in question were employees of the respective defendants and were within the coverage of the Act.

In the Maine Asphalt case, the employees are truckers who drove their own trucks for the purpose of hauling stone and asphalt in the defendant's road-surfacing operations during the Maine road-building seasons of 1959 and 1960. They were hired and paid upon the basis of an hourly rate of $1.38 for the driver and $3.62 for the truck, and were paid weekly by two checks, one for the driving wage and the other for the truck rental. The arrangement for payment of overtime hours, which was done openly, was to increase the wage rate by 50% and to decrease the truck rental by an equal amount, with the result that the total payment per hour remained constant.[1] The same method of payment for overtime hours was used when an operator other than the owner drove the truck.

In the Pinkham and Great Northern cases, the employees are truckers who drove their own trucks for the purpose of hauling pulp wood in the defendants' woodland operations during 1959 and 1960. They were hired and paid upon the basis of varying agreed rates per cord of wood hauled, generally around $4.15 per cord, and were paid weekly by a single check. In the employers' bookkeeping systems the weekly payment was divided into two parts, wages and truck rental. For overtime hours, the wage rate was increased by 50% and the truck rental was decreased by an equal amount. In these cases also the method of payment was openly applied and was used regardless of who drove the truck.

Witnesses from Great Northern's management explained that the company adopted this method of payment in January, 1959 because it gave the company fixed costs for planning purposes, was more easily understood by the truckers, and involved less bookkeeping.[2] They stated that the company's officers and its counsel considered the practice lawful because it had been upheld in Durkin v. Santiam Lumber Co., 115 F.Supp. 548 (D.Or.1953), a case which was followed in the report of a special master in this district in the case of Mitchell v. Cianchette (Civil No. 790, D.Me., August 16, 1956).[3] It appears from the statements of counsel that the other defendants con-

---

[1] For each of the first 40 hours in a workweek, the employee received $5.00, of which $1.38 represented his wage and $3.62 represented the rental of his truck. For each hour in excess of 40 hours in a workweek, the employee also received $5.00, of which $2.07 was allocated to his wage and $2.93 was allocated to truck rental.

[2] Under the company's prior practice, the employee received a slightly lower rate per cord, to which was added the premium wage for any overtime hours worked. Management witnesses testified that the total weekly payment would be approximately the same under either system.

[3] The special master's report was neither adopted nor rejected by the Court because the case was subsequently dismissed upon stipulation of the parties.

sidered the practice lawful upon the same basis.

■ The sole question presented by the cases at bar is whether there was a failure to pay overtime compensation in compliance with 29 U.S.C.A. § 207 because the overtime premium was offset by a reduction of the truck rental paid to the owner-operators for those hours of operation. The Court concludes, for the reasons stated below, that this payment practice did not comply with the Act.

The only authorities which have been presented on this question are the Santiam case and the special master's report in the Cianchette case, supra, upon which the defendants rely. The court in Santiam and the special master in Cianchette held this method of payment lawful upon the basis that a proper allocation of fixed costs in the operation of the rented trucks would show a reduction of cost which exceeded the wage premium during overtime hours. The defendants further point to a custom in the construction industry of reducing rental rates for heavy equipment, leased without an operator, by 50% or more after the equipment is operated a specified number of hours per week, usually related to a one-shift operation of 40 hours. The Court cannot accept either contention as applied to the facts of these cases. The defendants concede that these truck rental rates were not set upon the basis of either such an accounting theory or such a trade custom, a concession which is compelled by this record. The Court can see no validity in the argument that an accounting theory or a trade custom, neither of which was the basis for setting either the regular or the overtime truck rental rates in issue, justifies this arrangement. Nor does either negate what is to the Court the obvious conclusion that this payment method cancelled out the effect of overtime compensation in these transactions.

It is well established that the purposes of the Fair Labor Standards Act are to spread employment by placing financial pressure on the employer through the overtime pay requirement, and to compensate employees for the burden of a workweek in excess of the hours fixed by the Act. Overnight Motor Transp. Co., Inc. v. Missel, 316 U.S. 572, 577–578, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942); Walling v. Helmerich & Payne Inc., 323 U.S. 37, 40, 65 S.Ct. 11, 89 L.Ed. 29 (1944). The Act seeks to achieve these purposes by requiring that a 50% premium be paid for overtime hours. The Supreme Court has consistently held that overtime compensation must be paid as a matter of economic reality, and that the aims of the Act cannot be frustrated by any subterfuge designed to avoid the statutory premium. See Walling v. Helmerich & Payne Inc., supra at 42, 65 S.Ct. 11; Walling v. Youngerman-Reynolds Hardwood Co., Inc., 325 U.S. 419, 65 S.Ct. 1242, 89 L.Ed. 1705 (1945); Walling v. Harnischfeger Corp., 325 U.S. 427, 65 S.Ct. 1246, 89 L.Ed. 1711 (1945); 149 Madison Ave. Corp. v. Asselta, 331 U.S. 199, 67 S.Ct. 1178, 91 L.Ed. 1432 (1947), modified on other grounds, 331 U.S. 795, 67 S.Ct. 1726, 91 L.Ed. 1822 (1947); and Bay Ridge Operating Co., Inc. v. Aaron, 334 U.S. 446, 463, 488, 68 S.Ct. 1186, 92 L.Ed. 1502 (1948). Cf. Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28, 33, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961).

It is evident that these employers reduced the truck rental rates for the purpose of offsetting the payment of overtime compensation and thereby avoiding the operation of the Act. This conclusion is based upon the entire evidence presented, including the fact that the truck rental was reduced by the exact amount of the overtime wage, and only when the overtime wage became applicable.[4] Furthermore, the management witnesses offered by Great Northern and

4. Thus the truck rental was reduced by Great Northern and Pinkham only after 56 hours were worked in a workweek during the 14-week period in which these de-

fendants were entitled to a partial exemption from the overtime provisions of the Act by 29 U.S.C.A., § 207(b) (3).

Pinkham admitted that the purpose was to set a cost which would remain constant, whether or not a particular owner-operator worked in excess of forty hours per week. It cannot be disputed that predictable constant costs facilitate business planning. Although that ultimate objective is obviously desirable, the purpose to maintain a constant cost regardless of whether overtime hours are worked is necessarily a purpose to defeat the aims of the Act by negating the effect upon employer and employee which the Act imposes. The employer was relieved of the financial pressure of the requirement for overtime pay, and the employee lost his premium for overtime work.

Defendants argue strenuously that the Act does not, by its terms, regulate the parties' right to set truck rental rates as their relative bargaining power may dictate. While the parties' freedom to set their own truck rental rates is not lightly to be restricted, there has been no evidence presented of an independent economic justification, or of any legitimate reason, for the reduction of these truck rental rates by the precise amount of the overtime wage premium required by the Act. All that appears is the purposeful nullification of the effect of the Act upon these employers and employees. In such circumstances of evasion, it is this Court's view that the economic reality of overtime compensation has not been achieved. Therefore the Court holds that the owner-operators involved in the present actions were not properly paid in accordance with the provisions of the Act.

Only one matter remains for discussion.[5] The parties have stipulated as to the hours worked in the weeks in question and as to the amount of the overtime payments which were deducted from the truck rentals paid to the employees involved. Plaintiff seeks an injunction with respect to these under 29 U.S.C.A. § 217, as amended on May 5, 1961. Maine Asphalt contends, however, that the amounts computed represent unpaid truck rentals, rather than overtime compensation within the meaning of the Fair Labor Standards Act. This defendant misunderstands plaintiff's position. Plaintiff does not claim that the truck rentals were improperly reduced, or seek to recover additional amounts due the owner-operators as truck rentals. The Court understands plaintiff's contention, as demonstrated by the statute under which it brings this action, to be that while the defendants paid overtime wages in form, they did not do so in substance. The Court has upheld this contention, and it follows that the amounts in question are overtime compensation, and, as such, come within the terms of 29 U.S. C.A. § 217.

■ The Court will enter a customary decree in each case embodying the conclusions set forth in this opinion and enjoining the defendant from further violations of the Act and from withholding payment of the stipulated amounts of overtime compensation due to the employees involved. However, the Court is satisfied that the defendants have been acting in good faith under the advice of counsel and will in the future pay overtime compensation in accordance with the provisions of the Act. Therefore the operation of the injunction in each case will be suspended unless and until it is made clear that the defendant will not voluntarily comply with all the provisions of the Act, including the payment of the overtime compensation withheld. Plaintiff may move at any time more than thirty days and less than one year after the date of such a decree for an order removing the suspension of the operation of the injunction. Cf. Mitchell v. Singstad, 177 F.Supp. 376 (D.Md.1959).

Counsel for plaintiff will prepare appropriate decrees, to be approved as to form by defendants and submitted to the Court for signature and entry.

---

**5.** Plaintiff's allegation as to the failure to keep certain records required by the Act relates only to the fact that the records kept do not represent valid overtime compensation. It does not require separate treatment.