[No. B180814. Second Dist., Div. One. Aug. 2, 2005.]

HUNTINGTON MEMORIAL HOSPITAL, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
IRENE MUTUC et al., Real Parties in Interest.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.B.

COUNSEL

Musick, Peeler & Garrett, Philip Ewen and William J. Tebbe for Petitioner.

No appearance for Respondent.

Law Office of Joseph Antonelli, Joseph Antonelli and Janelle Carney for Real Parties in Interest.

OPINION

**MALLANO, J.**—Most of the nurses at Huntington Memorial Hospital in Pasadena, California, work 12-hour shifts. Under state law, the hospital must pay its nurses one and one-half times their regular rate of pay when they work in excess of eight hours in one day. It must pay double time for work that exceeds 12 hours in one day.

In addition to overtime compensation, the hospital pays a "short-shift differential" when a 12-hour nurse works fewer than 10 hours in one day. In that event, the nurse earns an extra sum, about $4.00, for each hour worked. If a nurse works 10 hours or more, the hospital does not pay the differential for any hours.

A group of nurses filed this action against the hospital, alleging that the short-shift differential violates overtime laws because nurses who work longer hours are paid a lower hourly wage. The hospital moved for summary adjudication on this issue, which the trial court denied.

The hospital filed a petition for writ of mandate with this court. We issued an order to show cause, established a briefing schedule, and set the matter for oral argument. We conclude that the trial court properly denied summary adjudication because there are disputed issues as to whether the short-shift differential is a subterfuge or artifice designed to evade the overtime laws.

# I

# BACKGROUND

For purposes of our review, we accept as true the following facts and reasonable inferences supported by plaintiffs' evidence and defendant's undisputed evidence. (See *Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 178–179 [70 Cal.Rptr.2d 96].)

Under California law, an employee must be paid overtime compensation for work performed in excess of eight hours in one day, calculated at one and one-half times the regular rate of pay. (Lab. Code, § 510, subd. (a).) After 12 hours of work in a single day, an employee must be paid double time. (*Ibid.*) Overtime pay is also required at time and one-half if an employee works more than 40 hours in a workweek. (*Ibid.*)[1]

Founded in 1892, the hospital is a nonprofit community hospital with 525 licensed beds. It is open every day, 24 hours a day. At the time nurses are hired, the hospital classifies them by length of shift—as either 8-hour employees or 12-hour employees—and assigns them a base (hourly) rate of pay. Eight-hour nurses are paid a higher base rate than their 12-hour counterparts, primarily because 12-hour positions are more popular among nurses and are therefore easier to fill.

In a typical two-week pay period, an 8-hour nurse will work 10 8-hour shifts for a total of 80 hours, and a 12-hour nurse will work six 12-hour shifts for a total of 72 hours. (See Cal. Code Regs., tit. 8, § 11050, subd. 3 (d).) Twelve-hour nurses typically work three days a week, giving them more time to pursue other interests or a second job. And the hospital administration prefers 12-hour shifts over 8-hour shifts for staffing reasons: Only two nurses are needed to cover a 24-hour period.

---

[1] Under federal law, overtime pay is required only if an employee works more than 40 hours in a workweek. Hours worked in one day, regardless of the number, do not require overtime pay. (See 29 U.S.C. § 207(a)(1), (2).)

As of September 2004, the hospital employed about 609 full-time 12-hour direct patient care registered nurses and 116 8-hour direct patient care registered nurses. If nurses are reclassified with respect to shifts (8 hours versus 12 hours), the base rate is adjusted—downward if the new assignment is a 12-hour shift and upward if the nurse begins working an 8-hour shift.

Before 1999, 12-hour nurses were subject to two pay rates, depending on whether they worked overtime. To take an example, during the pay period May 25, 1998, to June 7, 1998, plaintiff Irene Mutuc—a 12-hour nurse—worked five 12-hour shifts (her regular shifts) and one 8-hour shift (a short shift). For the regular shifts, each of which included four hours of overtime, she was paid **$23.50** per hour (the base rate) for the first *eight* hours, plus time and one-half for the remaining four hours. For the short shift, which involved no overtime, she was paid **$27.41** per hour for all *eight* hours. Her pay stub expressly referred to $27.41 as the "8 hr. rate." Thus, if 12-hour nurses worked only eight hours in a shift (no overtime), they received higher pay—$27.41 per hour—compared to the rate—$23.50 per hour—that 12-hour nurses received for the first eight hours of a full shift.

By memorandum dated December 20, 1999, the hospital announced that it was revising its pay stub for 12-hour nurses to reflect only one rate of pay—the lower 12-hour rate ($24.21 in the hospital's motion papers). The hospital also revised its pay practices. Instead of using the higher "8-hour rate" to pay nurses who did not work overtime, the hospital implemented a "short-shift differential": If a 12-hour nurse worked *fewer* than 10 hours on a shift, the hospital paid an additional hourly amount ($4.04 in January 2000) for *each* of the hours worked. By the same token, if a 12-hour nurse worked *10 hours or more*, the short-shift differential ($4.04) was not paid for *any* hours worked. The hospital readily admits that the short-shift differential—the extra $4.04 per hour—was intended to replace the prior 8-hour rate.

On January 17, 2003, plaintiffs, four nurses, filed this action against the hospital on behalf of themselves and others similarly situated. An amended complaint followed. It contained several causes of action, including a claim under the California unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.), alleging that the hospital's pay practices violated state overtime laws (Lab. Code, § 510, subd. (a)) and that employees' pay stubs did not contain all of the statutorily required information (see Lab. Code, § 226, subd. (a)). The case was certified as a class action.

On September 23, 2004, the hospital moved for summary judgment or, in the alternative, summary adjudication. The motion sought to adjudicate 15

issues, including the alleged violations of the overtime and pay stub laws. Plaintiffs filed opposition papers. The trial court denied summary judgment and granted summary adjudication in part, but concluded that the overtime and pay stub issues should be tried. In its writ petition, the hospital challenges the ruling on those two issues.

## II

## DISCUSSION

■ A motion for summary judgment must be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)

■■ " 'A defendant seeking summary judgment has met the burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action cannot be established [or that there is a complete defense to that cause of action]. . . . In reviewing the propriety of a summary judgment, the appellate court independently reviews the record that was before the trial court. . . . We must determine whether the facts as shown by the parties give rise to a triable issue of material fact. . . . [T]he moving party's affidavits are strictly construed while those of the opposing party are liberally construed.' . . . We accept as undisputed facts only those portions of the moving party's evidence that are not contradicted by the opposing party's evidence." (*Jackson v. County of Los Angeles, supra*, 60 Cal.App.4th at pp. 178–179, citations omitted.)

■ "[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact. . . .

"[H]ow the parties moving for, and opposing, summary judgment may each carry their burden of . . . production depends on *which* would bear *what* burden of proof at trial." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850–851 [107 Cal.Rptr.2d 841, 24 P.3d 493], italics in original.) The same principles apply to motions for summary adjudication. (See *Lomes v.*

*Hartford Financial Services Group, Inc.* (2001) 88 Cal.App.4th 127, 131 [105 Cal.Rptr.2d 471].)

A. *Overtime Pay*

■ In California, the Industrial Welfare Commission (IWC) is empowered to issue "wage orders" regulating wages, work hours, and working conditions with respect to several industries and occupations. (See Lab. Code, §§ 70–74, 1173, 1178, 1178.5, 1182.) The Department of Industrial Relations, Division of Labor Standards Enforcement (DLSE) enforces the state's labor laws, including the IWC orders. (See *id.*, §§ 61, 95, 98–98.8, 1193.5.) The IWC has promulgated 18 wage orders: Twelve of them cover specific industries, four cover certain occupations, one is a general minimum wage order, and one applies to industries and occupations not covered by, and all employees not specifically exempted in, the wage orders in effect in 1997. (See Cal. Code Regs., tit. 8, §§ 11000–11170.)[2]

"The purpose behind the overtime pay requirement is two-fold: (1) to spread employment by encouraging employers to avoid overtime work and thereby employ additional workers on a regular basis; and (2) where the employer prefers overtime work, to compensate the employee for the burden of working longer hours." (*Donovan v. McKissick Products Co.* (10th Cir. 1983) 719 F.2d 350, 352; accord, *Klinedinst v. Swift Investments, Inc.* (11th Cir. 2001) 260 F.3d 1251, 1256.)

■ Under state and federal law, overtime compensation is based on an employee's "regular rate." (See Lab. Code, § 510, subd. (a); 29 U.S.C. § 207(a)(1), (2).) More specifically, California Labor Code section 510, subdivision (a) provides, as relevant here, an employee is entitled to overtime pay at one and one-half times the "regular rate" for work in excess of eight hours in one day and twice the "regular rate" for work in excess of 12 hours in one day.

As the DLSE has stated in several advice letters: "[The] DLSE takes the position that the failure of the IWC to define the term 'regular rate' indicates the Commission's intent that in determining what payments are to be included in or excluded from the calculation of the regular rate of pay, California will adhere to the standards adopted by the U.S. Department of Labor to the extent that those standards are consistent with California law." (Cal. Dept. Industrial Relations, DLSE, H. Thomas Cadell, Jr.,

---

[2] Effective July 1, 2004, the Legislature defunded the IWC. The wage orders remain in effect. (See IWC Home Page, at <http://www.dir.ca.gov/IWC/iwc.html> [as of Aug. 2, 2005].)

advice letter, Calculation of Regular Rate of Pay (Jan. 29, 2003) pp. 2, fn. 1, 3; accord, *id.*, advice letter, Calculation of Regular Rate of Pay in Cases Involving Piece Rate (Feb. 22, 1993) p. 2 & fn. 2; *id.*, advice letter, Explicit Wage Agreements (Jan. 29, 1992) p. 1; *id.*, advice letter, Calculation of Regular Rate of Pay (Mar. 6, 1991) p. 1;[3] see *Bell v. Farmers Ins. Exchange* (2001) 87 Cal.App.4th 805, 815–816 & fn. 10 [105 Cal.Rptr.2d 59] [discussing judicial deference to DLSE advice letters]; *Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 584 [94 Cal.Rptr.2d 3, 995 P.2d 139] [same]; *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 568–577 [59 Cal.Rptr.2d 186, 927 P.2d 296] [same].)

■ Thus, even though this case involves California law—the payment of overtime for work in excess of eight hours in *one day*—and federal law requires overtime pay only for work exceeding 40 hours in *one workweek* (see fn. 1, *ante*), federal authorities still provide useful guidance in applying state law. (See *Building Material & Construction Teamsters' Union v. Farrell* (1986) 41 Cal.3d 651, 657–658 [224 Cal.Rptr. 688, 715 P.2d 648]; *Bell v. Farmers Ins. Exchange, supra*, 87 Cal.App.4th at pp. 817–818; *Monzon v. Schaefer Ambulance Service, Inc.* (1990) 224 Cal.App.3d 16, 30–31, 38–46 [273 Cal.Rptr. 615].)

■ In the Fair Labor Standards Act (FLSA) (29 U.S.C. § 201 et seq.), the "regular rate" is defined as "all remuneration for employment paid to, or on behalf of, the employee . . . ." (29 U.S.C. § 207(e).) The FLSA excludes several types of remuneration from the regular rate. Among the statutory exclusions are, in very basic terms: (1) gifts on special occasions; (2) payments made for occasional periods when no work is performed due to vacation, holiday, illness, or lack of work; (3) payments made for traveling expenses; (4) bonuses that are not promised and are determined in the employer's sole discretion as to the fact and amount of payment; (5) payments made pursuant to a bona fide profit-sharing plan; (6) contributions irrevocably made to a trustee or third person pursuant to a bona fide plan for providing old-age, retirement, life, accident, or health insurance; (7) extra compensation for working in excess of eight hours in one day or in excess of the employee's normal working hours; (8) extra compensation for working on Saturdays, Sundays, holidays, or regular days of rest; (9) extra compensation paid pursuant to an applicable employment contract or collective bargaining agreement for work outside the hours established in good faith by the contract or agreement as the basic, normal, or regular workday; and (10) any

---

[3] The DLSE's advice letters may be found at its Web site, at <http://www.dir.ca.gov/dlse/OpinionLetters-byDate.htm> as of Aug. 2, 2005.

value or income derived from grants or rights provided by the employer pursuant to a stock option or a bona fide employee stock purchase program. (*Id.*, § 207(e)(1)–(8); see generally 1 Wilcox, Cal. Employment Law (2005) § 3.08[2][a] to 3.08[2][h], pp. 3-94 to 3-112.)

The Code of Federal Regulations states that, in determining the regular rate, "[o]nly the statutory exclusions are authorized. It is important to determine the scope of these exclusions, since all remuneration for employment paid to employees which does not fall within one of these . . . exclusionary clauses must be added into the total compensation received by the employee before his regular hourly rate of pay is determined." (29 C.F.R. § 778.200(c) (2004), italics omitted; see U.S. Dept. of Lab., Wage and Hour Div., opn. letter (Feb. 25, 1994) p. 1 [cost of living allowance must be included in regular rate because it does not come within statutory exclusions]; U.S. Dept. of Lab., Wage and Hour Div., opn. letter (Jan. 23. 1997) p. 1 [lump-sum bonuses based on improvements in plant safety and production efficiency are not within statutory exclusions and must be included in regular rate]; 29 C.F.R. §§ 778.201–778.224 (2004) [discussing exclusions].)[4]

■ The Supreme Court has explained: "[T]he *regular rate* refers to the *hourly rate* actually paid the employee for the normal, *non-overtime* workweek for which he is employed. . . . As long as the minimum hourly rates . . . are respected, the employer and employee are free to establish this regular rate at any point and in any manner they see fit. They may agree to pay compensation according to any time or work measurement they desire. . . . 'But this freedom of contract does not include the right to compute the regular rate in a wholly *unrealistic* and *artificial* manner so as to *negate the statutory purposes.*' . . . The regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments. It is not an arbitrary label chosen by the parties; it is an actual fact. Once the parties have decided upon the amount of wages and the mode of payment the determination of the regular rate becomes a matter of mathematical computation, the result of which is unaffected by any designation of a contrary 'regular rate' in [a] wage contract[]." (*Walling v. Hardwood Co.* (1945) 325 U.S. 419, 424–425 [89 L.Ed. 1705, 65 S.Ct. 1242], citations omitted, italics added, quoted with approval in 29 C.F.R. § 778.108 (2004).)

---

[4] Some courts have commented that part 778 of title 29 of the Code of Federal Regulations constitutes an interpretive bulletin, not a set of regulations. (See *Monahan v. County of Chesterfield, Virginia* (4th Cir. 1996) 95 F.3d 1263, 1272–1273 & fn. 10; *Brooks v. Village of Ridgefield Park* (3d Cir. 1999) 185 F.3d 130, 135.) Either way, those standards are entitled to judicial deference. (*Monahan v. County of Chesterfield, Virginia, supra,* 95 F.3d at p. 1272, fn. 10.)

"If the employee is employed solely on the basis of a single hourly rate, the hourly rate is his 'regular rate.' " (29 C.F.R. § 778.110(a) (2004).) On the other hand, "[t]he [FLSA] does not require employers to compensate employees on an hourly rate basis; their earnings may be determined on a piece-rate, salary, commission, or other basis, but in such case the overtime compensation due to employees must be computed on the basis of the hourly rate derived therefrom and, therefore, it is necessary to compute the regular hourly rate of such employees during each workweek, with certain statutory exceptions . . . . The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." (29 C.F.R. § 778.109 (2004).)[5]

■ "[W]here different rates are paid from week to week for the same work and where the difference is justified by no factor other than the number of hours worked by the individual employee—the longer he works the lower the rate—the device is *evasive* and the *rate actually paid* in the shorter or *nonovertime* [period] is his *regular rate* for overtime purposes in all weeks." (29 C.F.R. § 778.327(b) (2004), italics added; see *Walling v. Hardwood Co., supra*, 325 U.S. at p. 424 ["regular rate refers to the hourly rate actually paid the employee for the normal, non-overtime workweek"].) In other words, "the hourly rate paid for the identical work during [overtime] hours . . . cannot be lower than the rate paid for nonovertime hours . . . ." (29 C.F.R. § 778.500(b) (2004).) "Overtime rates cannot be avoided by manipulating the pay for regular hours or otherwise reducing the pay for regular hours to make up for the . . . overtime rate that will have to be paid." (*Reich v. Midwest Body Corp.* (N.D.Ill. 1994) 843 F.Supp. 1249, 1251.)

For clarity, we distinguish between the pay practice at issue here, a *short-shift* differential—where an employee does not work a full 12-hour shift and, as a result, receives extra pay for the time worked—and a *shift* differential—where an employee receives additional pay due to the nature of the work, such as working a nightshift or performing undesirable tasks. (See *O'Brien v. Town of Agawam* (1st Cir. 2003) 350 F.3d 279, 295; 29 C.F.R. § 778.207(b) (2004).) The parties agree that a *shift* differential must be included in the regular rate, and rightly so. (See *O'Brien, supra,* at p. 295.) Their disagreement concerns *short-shift* pay.

[5] In its petition, the hospital states that a nurse's regular rate is not simply the base rate. Rather, the regular rate is the "average hourly rate," which is calculated in two steps. The hospital first totals all compensation in a pay period, including non-straight-time compensation like bonuses and extra pay for particular shifts like the nightshift and on-call shifts. The total is then divided by the number of hours worked in the pay period. Consequently, the regular rate, as calculated by the hospital, is generally higher than the base rate even though the regular rate does not include short-shift payments.

As plaintiffs see it, the short-shift differential is a means of avoiding overtime pay. Nurses who work more overtime hours are denied the short-shift differential solely because of the number of hours they work. When 12-hour nurses hit the 10-hour mark, they lose the short-shift differential for all 10 hours, notwithstanding that they may work less than a full 12-hour shift. By contrast, nurses who work eight hours—no overtime—earn an extra $4.04 per hour for each hour they work. (See *Frank v. McQuigg* (9th Cir. 1991) 950 F.2d 590, 595–597 [employer violated FLSA by paying higher hourly rate for 40 hours of work in a nonovertime week than for first 40 hours of work in an overtime week].)

█ Plaintiffs argue that, because the short-shift differential is paid to *all* 12-hour nurses for *all* hours worked in a *nonovertime* shift (eight hours or less), the differential should be included in the regular rate. (See *Walling v. Hardwood Co., supra,* 325 U.S. at p. 424; 29 C.F.R. §§ 778.327(b), 778.500(b) (2004).) As the trial court commented in denying the hospital's summary adjudication motion, " 'Payment for overtime on the basis of an *artificial* 'regular' rate will not [comply] with the overtime provisions of the [FLSA].' " Quoting 29 C.F.R. § 778.500(a) (2004), some italics omitted.)

Further, if it is not included in the regular rate, the short-shift differential may produce odd results. For example, as indicated by the hospital's evidence, if 12-hour nurses earn $24.21 as a base rate and work 9.9 hours, they will be paid a total of **$307.91** for the shift—eight hours of straight time ($193.68); 1.9 hours of overtime, at time and one-half ($74.23); and a short-shift differential for each hour worked ($40.00). But if the same nurses work an additional six minutes for a total of 10 hours, the short-shift differential will not be included, and the nurses will be paid **$271.82**—eight hours of straight time ($193.68) and two hours of overtime, at time and one-half ($78.14). Thus, by working an *extra* .1 hour, the nurses *lose* $36.09.

The hospital defends the short-shift differential on a number of grounds. The differential encourages 12-hour nurses to accept additional assignments that are shorter than 10 hours. It also helps offset a loss in pay when nurses experience a lack of work caused by low patient census. And the differential is paid if nurses further their education by attending a seminar of less than 10 hours. The hospital views the short-shift differential as a voluntarily conferred benefit, not part of the regular rate of pay.

With respect to lack of work, federal law provides: "Payments which are made for *occasional* periods when the employee is not at work due to . . . *failure of the employer to provide sufficient work* . . . are not made as

compensation for his hours of employment. Therefore, such payments may be *excluded* from the *regular rate* of pay . . . .

". . . [This exclusion] deals with the type of absences which are infrequent or sporadic or unpredictable. It has no relation to regular 'absences' such as lunch periods nor to regularly scheduled days of rest. . . .

"The term 'failure of the employer to provide sufficient work' is intended to refer to *occasional, sporadically recurring* situations where the employee would normally be working but for such a factor as machinery breakdown, failure of expected supplies to arrive, weather conditions affecting the ability of the employee to perform the work and similarly unpredictable obstacles beyond the control of the employer. The term does not include reduction in work schedule . . . , ordinary temporary layoff situations, or any type of *routine, recurrent* absence of the employee." (29 C.F.R. § 778.218(a)–(c) (2004), italics added.) Here, the hospital has not discussed the applicability of this standard, nor has it cited any evidence that the failure to provide sufficient work is occasional or sporadic.

In an effort to determine the legality of the short-shift differential, a certified public accountant, acting on behalf of the nurses, sent a letter of inquiry to the DLSE on April 15, 2001, stating: "I am a CPA in the Los Angeles area. A number of my clients work for a prominent, southern California hospital that has adopted a practice of paying non-exempt, nursing personnel differing, hourly, rates of pay based exclusively on how many hours an employee works in a day.

"The hospital assigns each nurse a 'regular' rate of pay (e.g., $20 per hour). The nurse is paid this rate if he/she works a 10 or 12 hour shift. However, if the nurse works less than a 10 [hour] shift, he/she receives an 'hourly differential' (e.g., $3.35 per hour) in addition to the regular rate (e.g., $20 per hour) which effectively results in a higher, hourly rate of pay (e.g., $23.35 per hour). This practice punishes nurses who work 10/12 hour shifts, by cutting their hourly rate of pay. Of course, the hospital argues it is punishing no one by paying a 'bonus' to employees who work less than 10 hours a day.

"I am aware that [it] is commonplace to pay nurses a shift differential (e.g., more money for working night shift than day shift). However, I did not think it was permissible for hospitals to alter an employee[']s rate of pay based exclusively on the number of hours he/she works. Is my understanding correct . . . ?"

The DLSE responded on May 3, 2001, as follows: "To the extent that the work engaged in by the nurses is work for which overtime is payable under

California law, the practice described in your information request is illegal. In effect, the employer is paying a lower hourly rate for the same type of work whenever the employee works overtime. This practice is prohibited by state law, as well as federal law, since it constitutes a *subterfuge which operates to evade the overtime pay laws* by reducing the regular hourly rate whenever overtime hours are worked. . . . In the context of such a practice, the hourly rate that would have been paid in the absence of overtime work (here $23.35 per hour) will be deemed the 'regular rate of pay' due and payable for all 'hours worked' and upon which the prescribed time and a half and double time premiums must be paid for all overtime hours worked." (Italics added.)

The hospital asserts that the DLSE's response is of no significance because the letter of inquiry did not accurately describe the hospital's pay practices. The hospital faults the letter for omitting relevant facts and for defining the short-shift differential "as a base rate that slides up and down depending on the amount of hours an employee works." Plaintiffs take issue with the hospital's characterization. We do not referee such disputes in reviewing a summary adjudication order.

For its part, the hospital relies on a DLSE advice letter to another hospital approving extra pay for a "short shift" in limited circumstances. There, employees who did not work a full shift received a bonus consisting of a "blended rate," which the DLSE defined as "one used when different hourly rates are paid by the same employer to an employee for *differing types of work*." (Cal. Dept. Industrial Relations, DLSE, H. Thomas Cadell, advice letter, Calculation of Regular Rate of Pay (Jan. 29, 2003) pp. 1–3, italics added.) But here, the payment of the short-shift differential is based on the number of hours worked, not on whether a nurse performs more than one *type* of work during a shift. And the DLSE made clear in the advice letter that the short-shift payment would be valid only if "[t]he type of absence envisioned is 'infrequent or sporadic or unpredictable.' " (*Ibid.*) We have already discussed that factor. (See pp. 906–907, *ante* [quoting 29 C.F.R. § 778.218(a)–(c) (2004)].)

The hospital points out that the IWC has issued a wage order approving the use of a short-shift payment in the context of an alternative workweek schedule (AWS). The hospital contends that, although it has not adopted an AWS, the wage order nevertheless supports its use of the short-shift differential. We disagree.

Wage order No. 5-2001 (hereafter wage order) governs the wages and work hours of the hospital's nurses. (See Cal. Code Regs., tit. 8, § 11050, subd. 2(P)(4); 1 Wilcox, Cal. Employment Law, *supra*, § 1.05[2][a], p. 1-26;

IWC, Which IWC Order? Classifications (2003) p. 2 <http://www.dir.ca.gov/dlse/WhichIWCOrderClassifications.pdf> [as of Aug. 2, 2005].)

The wage order states in part: "No employer shall be deemed to have violated the daily overtime provisions by instituting, pursuant to the election procedures set forth in this wage order, a regularly scheduled alternative workweek schedule of not more than ten (10) hours per day within a 40 hour workweek without the payment of an overtime rate of compensation." (Cal. Code Regs., tit. 8, § 11050, subd. 3(B)(1).) The order continues: "If an employer whose employees have adopted an alternative workweek agreement . . . requires an employee to work fewer hours than those that are regularly scheduled by the agreement, the employer shall pay the employee overtime compensation at a rate of one and one-half (1-1/2) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours . . . ." (*Id.*, subd. 3(B)(2); see also *id.*, subd. 3(B)(8) [permitting longer nonovertime workday in health care industry].)

■ Under the wage order, an employer and its employees may adopt an AWS that, for example, establishes a regular work schedule of 10 hours per day, four days a week, and obligates the employer to pay overtime for work exceeding 10 hours in one day. If the employer requires only nine hours of work on a particular day, the employees must be paid overtime for the ninth hour—as if the AWS had not been adopted. (See Lab. Code, §§ 510, subd. (a)(1), 511, subd. (a); Cal. Code Regs., tit. 8, § 11050, subd. 3(A), (B).) Put another way, the employees are entitled to one hour of overtime pay, at time and one-half—instead of straight time—because they did not get to work a full shift (10 hours). (See *Mitchell v. Yoplait* (2004) 122 Cal.App.4th Supp. 8, 9–12 [19 Cal. Rtpr. 3d 267].) In essence, the employer must pay a "short-shift *penalty.*" (Simmons, Wage and Hour Manual for Cal. Employers (10th ed. 2004) § 9.8(b), p. 370, italics added.)

The hospital argues that because an employer operating under an AWS is *required* to make a short-shift payment, the wage order supports the hospital's *voluntary* decision to pay a short-shift differential. Not so. The wage order permits a short-shift payment only where (1) an employer and its employees have agreed to an AWS in accordance with strict election procedures, and (2) two-thirds of the affected employees have approved an AWS agreement by secret ballot. (See Cal. Code Regs., tit. 8, § 11050, subd. 3(C).) Thus, because no AWS was agreed to here, the wage order does not lend any legitimacy to the hospital's unilateral short-shift differential.

Nor is the differential justified as "reporting time" compensation, which must be paid regardless of whether an employer has adopted an AWS. Under

the wage order, if employees are required to report to work and, having done so, are given either no work or less than half a day's work, they are entitled to pay for one-half of the workday at the regular rate of pay, *not to exceed* compensation for *four hours.* (See Cal. Code Regs., tit. 8, § 11050, subd. 5(A).) In contrast, this case challenges an employer's compensation of employees who work *10 hours or more.*

 While the parties may not have cited any case law on the subject of voluntarily adopted short-shift payments, courts have addressed similar issues. (See, e.g., *Ballaris v. Wacker Siltronic Corp.* (9th Cir. 2004) 370 F.3d 901, 909 [payments for lunch periods, when employees do not work, are not included in regular rate]; *Featsent v. City of Youngstown* (6th Cir. 1995) 70 F.3d 900, 902 & fns. 1 & 2, 904, 905 [hazardous duty pay and extra pay for working nightshift are included in regular rate, but bonus paid for not using sick leave is excluded]; *Brock v. Two R Drilling Co., Inc.* (5th Cir. 1985) 772 F.2d 1199, 1200–1204 & fn. 4 [some, but not all, bonuses are included in regular rate]; *Theisen v. City of Maple Grove* (D.Minn. 1999) 41 F.Supp.2d 932, 937–938 [longevity payments may have to be included in regular rate, depending on the circumstances].) The Supreme Court has stated: "Where an employee receives a higher wage or rate because of undesirable hours or disagreeable work, such wage represents a shift differential or higher wages because of the character of work done or the time at which he is required to labor . . . . Such payments enter into the determination of the regular rate of pay." (*Bay Ridge Operating Co. v. Aaron* (1948) 334 U.S. 446, 468–469 [92 L.Ed. 1502, 68 S.Ct. 1186], fn. omitted.)

And the Code of Federal Regulations is of assistance, stating: "The [FLSA] requires the inclusion in the regular rate of such extra premiums as nightshift differentials . . . and premiums paid for hazardous, arduous or dirty work. It also requires inclusion of any extra compensation which is paid as an incentive for the rapid performance of work . . . ." (29 C.F.R. § 778.207(b) (2004).)

 The bottom line is this: An employer may not engage in a subterfuge or artifice designed to evade the overtime laws. (See *Walling v. Hardwood Co., supra,* 325 U.S. at pp. 424–425; *Rogers v. City of Troy, New York* (2d Cir. 1998) 148 F.3d 52, 58; *Lamon v. City of Shawnee, Kan.* (10th Cir. 1992) 972 F.2d 1145, 1152; *Intern. Ass'n of Firefighters v. Rome, Ga.* (N.D.Ga. 1988) 682 F.Supp. 522, 527–528; *Goldberg v. Maine Asphalt Road Corporation* (D.Me. 1962) 206 F.Supp. 913, 915; 29 C.F.R. §§ 778.105, 778.210, 778.301, 778.327(a), 778.328, 778.500(b) & (d), 778.501(a) (2004).)

 And even though the use of short-shift pay may be customary in the healthcare industry, " 'The Fair Labor Standards Act was not designed to

codify or perpetuate [industry] customs . . . . Congress intended, instead, to achieve a uniform national policy of guaranteeing compensation for all work or employment engaged in by employees covered by the Act. Any custom . . . falling short of that basic policy . . . cannot be utilized to deprive employees of their statutory rights.' " (*Barrentine v. Arkansas-Best Freight System* (1981) 450 U.S. 728, 741 [67 L.Ed.2d 641, 101 S.Ct. 1437], bracketed material added in *Barrentine*.)

An employer cannot " 'adhere[] to customary and widespread industry practices that violate the [FLSA's] overtime pay provisions' " or "violate overtime requirements as a ' "reasonable and necessary" competitive response[] to the "market for qualified employees." ' . . . [¶] [A defense to an overtime claim] is not shown when an employer does not inquire about the law's requirements, simply follows an industry trend of not complying with the law, or violates the law in order to remain competitive." (*Keeley v. Loomis Fargo & Co.* (3d Cir. 1999) 183 F.3d 257, 270; see *id.* at pp. 269-271 & fn. 10 ["good faith" defenses to FLSA action cannot be based on industry custom or market forces]; *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 179–181 [96 Cal.Rptr.2d 518, 999 P.2d 706] [in action under UCL, trial court may consider employer's "good faith" in fashioning equitable remedy]; cf. *Tennessee Coal Co. v. Muscoda Local* (1944) 321 U.S. 590, 603 [88 L.Ed. 949, 64 S.Ct. 698] [industry custom may be pertinent where calculation of precise work hours is difficult or impossible or where facts give rise to serious doubts as to whether certain activity or nonactivity constitutes work or employment].)

In sum, plaintiffs argue that, based on the evidence, the short-shift differential should be included in the regular rate because the hospital pays the differential for *all hours* worked in a *nonovertime* shift. Otherwise, they contend, the differential is a subterfuge or artifice designed to avoid paying overtime and imposes a penalty on *them*, not the hospital.

The hospital's motion for summary adjudication did not establish as a matter of law that the short-shift differential is not a subterfuge or artifice. The trial court therefore properly denied the motion.

B. *Pay Stub Information**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 893.

## III

## DISPOSITION

The petition for a writ of mandate is denied. Real parties in interest are awarded costs in connection with this proceeding.

Spencer, P. J., and Vogel, J., concurred.