Diane ADOMA, Plaintiff,

v.

The UNIVERSITY OF PHOENIX, INC., et al., Defendants.

No. CIV. S–10–0059 LKK/GGH.

United States District Court, E.D. California.

March 11, 2011.

Megan Ross Hutchins, Michael Lion Tracy, Law Office of Michael Tracy, Irvine, CA, for Plaintiff.

Jason S. Mills, John Spivey Battenfeld, Morgan, Lewis & Bockius LLP, Los Angeles, CA, for Defendants.

## ORDER

LAWRENCE K. KARLTON, Senior District Judge.

Class plaintiffs bring several wage and hour claims against defendants University of Phoenix, Inc., a for-profit university, and Apollo Group, Inc., its parent company. The parties bring cross-motions for partial summary judgment on the limited question of whether defendants were required to include the value of a tuition benefit when calculating an employee's regular rate of pay for the purpose of paying overtime under California law. For the reasons described below, both motions are denied without prejudice.

## I. BACKGROUND

### A. Factual Background

Defendant University of Phoenix ("UOP") is a private for-profit educational institution that offers classes at 362 independent campuses throughout the United States and through online programs. Defendant Apollo Group, Inc. ("Apollo") is the parent company of UOP and handles all of the administrative functions relating to payroll.

Class representatives Diane Adoma ("Adoma") and Michelle Abbaszadeh ("Abbaszadeh") worked as non-exempt, Enrollment Counselors ("ECs") for the

defendants. Abbaszadeh began her employment as a "temporary" EC in late September 2009. Upon completing her probationary period of several months, she converted to a "permanent" employee, at which time she became eligible for UOP's Education Tuition Program ("ETP") that provides a 100% tuition waiver for course work taken at UOP and other subsidiaries of Apollo. Abbaszadeh took advantage of the ETP, enrolling in three courses during her employment. She also testified that the courses would have cost her approximately two thousand dollars each. Abbaszadeh Dep. 66:16–21, June 29, 2010, Doc. No. 115–3. Abbaszadeh's hourly pay rate was $19.23. Class Representative Adoma apparently did not take advantage of the tuition benefit.

Dependents of eligible employees are also able to receive an 80% discount in tuition through the ETP. Additionally, the program provides for tuition reimbursement for course work taken at non-Apollo institutions that meet certain criteria, including that the course is not offered by any Apollo subsidiary, will improve the employee's current job/professional responsibilities, and is approved by the president of Apollo.

UOP's ETP policy states that a purpose of the program is "to help [UOP] meet its commitment of being a dominant force in higher education" because "employees are able from a student consumer perspective, to help maintain and improve the quality of the Company's educational services." Decl. of Mark Brooks Ex. 1. 3, July 12, 2010, Doc. No. 38–1. Employees who utilize this benefit are responsible for paying the cost of books and materials, class fees, and a discounted "rEsource fee" for electronic course materials. *Id.*

This benefit applies only to active, full-time, regular employees. Employees who are subject to certain disciplinary actions or who are on 90–day extended leaves of absence are ineligible. Employees on more limited leaves of absence under the Family Medical Leave Act, 30–day personal leave, military leave, and various state-mandated leaves are able to retain their eligibility for the benefit. Before receiving the benefit, employees must achieve a score of 100% on a certain computer based training course.

## B. Procedural History

On January 8, 2010, plaintiffs filed a complaint, alleging claims under the California Labor Code, the Business and Professions Code, and the federal Fair Labor Standards Act ("FLSA") and seeking class certification and certification as an FLSA collective action. Complaint, Doc. No. 2 (Jan. 8, 2010). On August 13, 2010, this court transferred plaintiffs' federal claims to the Eastern District of Pennsylvania, pursuant to the first-to-file rule, and in light of *Sabol v. The University of Phoenix*, No. 09–3439–JCJ, 2010 WL 1956591 (E.D.Pa. May 12, 2010). Order, Doc. No. 70 (Aug. 13, 2010). *Sabol* was filed as a collective action against the same defendants and encompasses the California plaintiffs. There, as here, the plaintiffs alleged unpaid hours and unpaid overtime under the FLSA for ECs. The question of whether the tuition benefit should be included in the regular rate of pay is not before the court in *Sabol*.[1] *See* Order, 711 F.Supp.2d 1142, 1148 (E.D.Cal.2010).

On August 31, 2010, this court concluded that it has jurisdiction over plaintiff's state law claims under the Class Action Fairness Act, 28 U.S.S. 1332(d), and granted

---

1. Counsel for plaintiffs represented that plaintiffs' counsel in *Sabol* told him that he is not pursuing a claim that the tuition benefit should be included in ECs' regular rate of pay.

the plaintiffs' motion for class certification under Fed.R.Civ.P. 23(b)(3).

Class plaintiffs bring four state law claims. First, they allege a claim for unpaid "off-the-clock" overtime under California law. Second, plaintiffs bring a claim for violation of California law for defendants' failure to include the value of the tuition benefit when calculating class members' regular rate. Third, plaintiffs contend that defendants obliged their employees to miss meal periods. Finally, plaintiffs bring state law claims for waiting time penalties and inaccurate pay stubs.

The parties have filed cross motions for partial summary judgment, seeking disposition of the second claim. The motions were heard on February 28, 2011.

## II. STANDARD FOR FED. R. CIV. P 56 MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate when there exists no genuine issue as to any material fact. Such circumstances entitle the moving party to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 853 (9th Cir.1995). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish the existence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Sicor Ltd.*, 51 F.3d at 853. In doing so, the opposing party may not rely upon the denials of its pleadings, but must tender evidence of specific facts in the form of affidavits and/or other admissible materials in support of its contention that the dispute exists. Fed.R.Civ.P. 56(e); *see also First Nat'l Bank*, 391 U.S. at 289, 88 S.Ct. 1575. In evaluating the evidence, the court draws all reasonable inferences from the facts before it in favor of the opposing party. *Matsushita*, 475 U.S. at 587–88, 106 S.Ct. 1348 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (*per curiam*)); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir.2001). Nevertheless, it is the opposing party's obligation to produce a factual predicate as a basis for such inferences. *See Richards v. Neilsen Freight Lines*, 810 F.2d 898, 902 (9th Cir.1987). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. 1348 (citations omitted).

Rule 56(f) of the Federal Rules of Civil Procedure allows a party to avoid summary judgment where affidavits are not available which are necessary to support a party's opposition to the motion for summary judgment. Fed.R.Civ.P. 56(f). Rule 56(f) motions are to be granted freely where the party requesting additional time has complied with the Rule's requirements. *Burlington Northern Santa Fe R. Co. v. Assiniboine and Sioux Tribes of Fort Peck*

*Reservation,* 323 F.3d 767, 773–774 (9th Cir.2003); *Metabolife Int'l, Inc. v. Wornick,* 264 F.3d 832, 846 (9th Cir.2001). In order to be successful on a 56(f) motion, the party must show (1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are "essential" to resist the summary judgment motion. *State of Cal., on Behalf of California Dept. of Toxic Substances Control v. Campbell,* 138 F.3d 772, 779 (9th Cir. 1998); *see also VISA Intern. Service Ass'n v. Bankcard Holders of America,* 784 F.2d 1472, 1475 (9th Cir.1986) ("[D]enial of a Rule 56(f) application is generally disfavored where the party opposing summary judgment makes (a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists.").

Rule 56(f) motions should be granted liberally "unless the non-moving party has not diligently pursued discovery of the evidence." *Wichita Falls Office Assoc. v. Banc One Corp.,* 978 F.2d 915, 919 n. 4 (5th Cir.1992). The Ninth Circuit has also held that denial of 56(f) motions is "especially inappropriate where the material sought is also the subject of outstanding discovery requests." *VISA Intern. Service Ass'n,* 784 F.2d at 1475.

## III. ANALYSIS

### A. Whether the Court Should Decide This Question

As an initial matter, the court must determine whether it should decide this question because to do so concerns a resolution of federal law, and all federal claims are to be decided in the Eastern District of Pennsylvania. Federal wage and hour laws and regulations set the floor for wage and hour requirements under California law. *See Harris v. Investor's Business Daily, Inc.,* 138 Cal.App.4th 28, 32, 41 Cal.Rptr.3d 108 (2006). Accordingly, so long as there is no California authority on whether a certain type of remuneration must be included in the regular rate of pay, federal law dictates whether inclusion is required. *See Huntington Memorial Hosp. v. Superior Ct.,* 131 Cal.App.4th 893, 902, 903, 32 Cal.Rptr.3d 373 (2005). The specific question at issue here, while on its face a question of California law, will nonetheless require interpretation of federal laws and regulations because California statutes and regulations have not defined the regular rate of pay. While ordinarily the court would pause before issuing such a ruling on federal law in light of the concurrent litigation in Pennsylvania, the court here declines to do so. Specifically, the *Sabol* action does not contain a claim concerning whether the tuition benefit should be included in calculation of EC's regular rate of pay nor is there any indication that the *Sabol* plaintiffs are pursuing such a claim. *Sabol v. The University of Phoenix,* Collective Action Complaint, No. 209CV03439, 2009 WL 2600923 (E.D.Pa. July 30, 2009); *see also* Order, Doc. No. 70 (Aug. 13, 2010). Thus, the court now turns to whether UOP's tuition benefit for ECs should be calculated in their regular rate of pay.

### B. Determination of the Regular Rate of Pay Under California Law

The parties agree that whether the tuition benefit must be included in the calculation of the class members' regular rate of pay under California law is determined by whether the benefit must be included under the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 207. *Huntington Memorial Hosp. v. Super. Ct.,* 131 Cal. App.4th 893, 902–03, 32 Cal.Rptr.3d 373 (2005) (summarizing California Department of Labor Standards Enforcement re-

peatedly held position that failure of the California's Industrial Welfare Commission to define the regular rate indicates its intent that California shall adhere to the definition under the FLSA and subsequently applying Section 207 to determine regular rate under California law); *see Lujan v. S. Ca. Gas Co.*, 96 Cal.App.4th 1200, 1209, 117 Cal.Rptr.2d 828 (2002) (California "may use its own definition of 'regular rate' and may set its own standard regarding the adequacy of overtime pay *as long as it does not fall below the federal standards.*") (emphasis added); *see also Advanced–Tech Sec. Servs., Inc. v. Super. Ct.*, 163 Cal.App.4th 700, 707, 77 Cal. Rptr.3d 757 (2008) (California Supreme Court frequently refers to federal precedent in interpreting parallel language in state labor legislation.). Here, neither party contends that California law explicitly provides for a more expansive standard for calculating the regular rate than does the FLSA with respect to whether the tuition benefit at issue must be included. Thus, this question of state law will be determined through interpretation of federal statutes and regulations.

### C. Calculation of the Regular Rate of Pay Under the FLSA

#### 1. FLSA Regulations Permit Only Enumerated Exceptions

■ The "regular rate" for purposes of overtime under the FLSA is an hourly rate. *Walling v. Youngerman–Reynolds Hardwood Co.*, 325 U.S. 419, 424, 65 S.Ct. 1242, 89 L.Ed. 1705 (1945). When employees are paid on a non-hourly basis, the regular rate is determined by dividing the total remuneration by the amount of hours actually worked. 29 C.F.R. 778.109. The regular rate is multiplied by one and one half to determine the rate of pay for the employee's overtime hours. 29 U.S.C. 207(a)(1).

■ The FLSA enumerates the forms of compensation that an employer may exclude from the regular rate when calculating overtime pay. The Act provides that an employer shall not "employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). The general rule is that the "regular rate" includes "all remuneration." 29 U.S.C. § 207(e). Section 207(e) then specifies eight exemptions from the general rule. Only one exemption from the general rule is relevant to the instant dispute. Under this exemption, the regular rate

shall not be deemed to include ...

(2) payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause; reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and *other similar payments to an employee which are not made as compensation for his hours of employment* ....

29 U.S.C. § 207(e) (emphasis added) ("Subsection (e)(2)"). All other forms of remuneration must be included in the regular rate. 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.200(c).

■ The employer bears the burden of proof to show that a particular payment falls within the exemptions enumerated in the FLSA. *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 206, 209, 86 S.Ct. 737, 15 L.Ed.2d 694 (1966) (holding that the burden of proving an exemption under the FLSA is upon the employer); *Local*

*246 Util. Workers Union of Ame. v. S. Cal. Edison Co.*, 83 F.3d 292, 296 (9th Cir.1996) (*"Local 246"*). Exemptions are narrowly construed. *Cleveland v. City of Los Angeles*, 420 F.3d 981, 988 (9th 2005). Thus, defendant bears the burden to prove that the tuition benefit should be considered an "other similar payment" under Subsection e(2).

While there is little binding precedent on the interpretation of this Subsection, the Ninth Circuit has issued one opinion explaining the meaning of "similar payments to an employee which are not made as compensation for his hours of employment." In *Local 246*, 83 F.3d at 295, an employer argued that a disability plan's reference to "regular weekly wage" implied that the supplemental payments under that plan were "not tied to hours but rather to the regular weekly wage." Thus, the employer argued, the payments were not made as compensation for hours of employment. *Id.* The Ninth Circuit disagreed. Specifically, it held that, when calculating the regular rate of pay, "The key point is that the pay or salary is compensation for work, and the regular rate must therefore be calculated by dividing all compensation paid for a particular week by the number of hours worked in that week." The Court of Appeals, then, continued to endorse *Reich v. Interstate Brands Corp.*, 57 F.3d 574, 577 (7th Cir.1995) *cert. denied*, 516 U.S. 1042, 116 S.Ct. 699, 133 L.Ed.2d 656 (1996), for the proposition that, "Even if payments to employees are not measured by the number of hours spent at work, that fact alone does not qualify them for exclusion under section 207(e)(2)." *Id.* at 297 n. 2.

In *Reich*, the Seventh Circuit considered whether a $12 credit paid to bakers who worked a schedule that did not include two consecutive days off is included in the regular rate of pay. 57 F.3d at 574. The court rejected the bakery's interpretation of Section 207(e)(2) to exclude any payments "not measured by the number of hours spent at work." *Id.* at 577. The Circuit cautioned that such an interpretation of the Subsection would allow employers to "evade the overtime requirements with ease." *Id.* After an exhaustive analysis of the Subsection, the Seventh Circuit concluded that, "The word 'similar' then refers to other payments that do not depend at all on when or how much work is performed. An extra payment made because the workplace is unpleasant, or the hours irregular, is no different in principle from a higher base rate compensating the employee for smelly or risky tasks, foul-tempered supervisors, or inability to take consecutive days off." *Id.* at 578–79.

For this reason, defendant's reliance on the Third Circuit opinion, *Minizza v. Stone Container Corp.*, 842 F.2d 1456 (3rd Cir. 1988), is misplaced. The Third Circuit in *Minizza* determined that two one-time lump sum amounts paid to the members of a bargaining unit pursuant to contract settlement terms were properly excluded from the regular rate as "other similar payments" in 207(e)(2). *Minizza*, 842 F.2d at 1462. The trial court in *Minizza* had found that the payments were not excluded under this provision because they were not "similar" to the other two categories in 207(e)(2). The Third Circuit rejected this finding, holding that the payments were similar because the enumerated categories of payment were, like the lump sums, not compensation "for hours of employment." Rather than compensation for their work, the Third Circuit found that the lump sums were an incentive for members to ratify the contract and, thus, should not be included in calculation of the regular rate of pay. *Id.* at 1461–62.

Defendants here contend that the tuition reimbursements are excludable following *Minizza* because they are not compensa-

tion for hours of employment. They take the approach that if an employee is not provided X in tuition benefits for every hour worked, that the tuition payments are excludable under Subsection (e)(2). That is simply not the case, nor does it appear to be the holding of *Minizza.* In *Reich,* the Seventh Circuit case explicitly endorsed by the Ninth Circuit, the court rejected such an interpretation of *Minizza.* It reasoned,

> But we hesitate to read § 7(e)(2) as a catch-all, one that obliterates the qualifications and limitations on the other Subsections and establishes a principle that all lump-sum payments fall outside the "regular rate," for then most of the remaining Subsections become superfluous. *Minizza* does not treat them so. Union and employer resolved a dispute with an agreement to make two lump-sum payments. The third circuit treated these payments as equivalent to sums received in litigation rather than as compensation for work; this conclusion does not imply that all lump-sum payments negotiated in the collective bargaining process are excluded from the "regular rate."

*Reich,* 57 F.3d at 578.

Further, it is well settled that a payment constituting part of the regular rate need not be "directly attributable to any particular hours of work." 29 C.F.R. 778.224; *Featsent v. City of Youngstown,* 70 F.3d 900, 904 (6th Cir.1995) ("Section 7(e)(2) does not exclude every payment not measured by hours of employment from the regular rate."); *Acton v. City of Columbia,* 436 F.3d 969, 976 (8th Cir.2006) ("[T]he language ... posited in § 207(e) is but a mere re-articulation of the 'remuneration for employment' set forth in the preambulary language of § 207(e).").

Defendants also cite to *Ballaris v. Wacker,* 370 F.3d 901 (9th Cir.2004), in support of their interpretation of Subsec-

tion (e)(2). In *Ballaris,* the Ninth Circuit found that defendant's half-hour paid lunch periods were excludable from the regular rate. *Id.* at 909. Specifically, the court recognized that, "[T]he parties treated the half-hour paid lunch period as non-working time." *Id.* Thus, the Circuit "conclude[d] that the payments for the lunch periods constituted an additional benefit for employees and not compensation for hours worked." *Id. Ballaris* is distinguishable from the case at bar. Under Subsection (e)(2), similar payments to those "made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause" are excludable. In *Ballaris,* no work was performed during the lunch periods. Thus, the Circuit reasonably concluded that the lunchtime payments were excludable. Here, however, the tuition benefit is not a payment made for a period where no work is performed. Rather, if a tuition benefit is a similar payment under the Subsection it must be similar to "reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer." Thus, *Ballaris* provides no guidance on the question before this court.

After consideration of the case interpreting the Subsection, the court concludes that when determining whether a payment qualifies as an "other similar payment" under Subsection (e)(2), the court must determine whether the payment was compensation for work, as opposed to benefits like vacation time, in which an employee is paid for time when he does not work, and reimbursement of employment related expenses, in which the employee is receiving payment for costs he has incurred and not for work done.

## 2. DOL Regulations

Where the Department of Labor ("DOL") provides relevant interpretative guidance on the FLSA through its regulations, such interpretation is entitled to great deference. *Imada v. City of Hercules*, 138 F.3d 1294, 1297 (9th Cir.1998). Here, tuition benefits are not explicitly identified in the exemptions to the regular rate. Rather, the court must determine whether they should be considered an "other similar payment." Thus, any regulations interpreting this statutory language are highly persuasive.

The regulation interpreting 29 U.S.C. § 207(e), 29 C.F.R. § 778.116, states that payments other than cash, such as those in the form of "goods or facilities," must be included in the regular rate, when regarded as part of wages.[2] The section does not provide guidance in how to distinguish a payment that is "regarded as part of wages" from one that is not. It does, however, provide a cross reference to section 531.32, which enumerates some non-cash payments that may be considered part of "wages." Section 531.32 in turn lists examples of such "facilities." The list includes meals, dormitory rooms, merchandise and "tuition furnished by a college to its student employees." 29 C.F.R. § 531.32(a). Section 531.32 also clarifies that facilities which are primarily for the benefit or convenience of the employer need not be included in computing wages. 29 C.F.R. § 531.32(c). Such facilities include things such as safety equipment, uniform rental, and transportation charges, when transportation is necessary for employment. *Id.* Likewise, the Section notes

that "meals are always regarded as primarily for the benefit and convenience of the employee." *Id.* Accordingly, the regulation strongly suggests that facilities that are regarded as primarily for the benefit and convenience of the employee must be included in the calculation of the regular rate.[3]

## 3. 1994 DOL Opinion Letter

In the past, the Department of Labor Administrator periodically issued interpretations of the FLSA and regulations though opinion letters. *Cash v. Conn Appliances, Inc.*, 2 F.Supp.2d 884, 890 (E.D.Tex.1997). The opinion letters are responses to fact-specific requests for advisory opinions from individuals or organizations. Though limited in their application, the agency's interpretation of its own regulations through these letters is given "a high degree of deference" unless plainly erroneous or inconsistent with the regulation. *Imada*, 138 F.3d at 1297.

In 1994, the Deputy Assistant Administrator of the Department of Labor ("Administrator") issued an opinion letter in response to a request from an employer about its tuition reimbursement program. The Administrator opined that the tuition reimbursement payments may be excluded from the regular rate under Subsection (e)(2). He noted that the letter was based "exclusively on the facts and circumstances described" in the employers' request, and that existence of additional facts might require a different outcome. Op. Letter, 1994 WL 1004844 (DOL Wage Hour Div. June 28, 1994). Unfortunately, his description of these facts was limited.

---

**2.** The parties engage in a debate as to when class representative Abbaszadeh became aware of UOP's tuition benefit. There is no basis for such a subjective test to determine whether a particular payment is regarded as a wage. Rather, as discussed in the previous section, the question is whether a payment

was made as compensation for work, and the language regarded as wages should be interpreted as regarded as compensation for work.

**3.** 29 C.F.R. § 531.32 has not been amended since the issuance of the DOL letter discussed in the following section.

The Administrator addressed whether an employer school district that provides tuition reimbursement in the amount of $60.00 per semester hour at external institutions, in order to encourage employees to continue their education, must include that reimbursement in the regular rate of pay. Course work reimbursed through the program "(1) may or may not be related to [the employee's] work (but it usually does) [sic], (2) includes communications and language skills, and (3) can qualify a nonexempt employee for a future upgrade or promotion." *Id.* Ultimately, the Administrator concluded that the reimbursement need not be included in the regular rate of pay. He provided only limited reasoning for his opinion:

> These payments, unlike a bonus offered as an incentive for performance or attendance on a job, are not made for hours included in the employees' regular hours of work. They serve to reimburse employees, who are acquiring knowledge that will be of mutual benefit to them and the employer, for the value which inures to the employer from the employees giving up a portion of their own time for the purpose.

*Id.*

 To the extent that the 1994 opinion letter conflicts with the DOL's regulations or with the FLSA, the regulations and statute are determinative. *Imada*, 138 F.3d at 1297. The Administrator explicitly stated that his reasoning is limited to the specific facts described. This acknowledgment further limits the amount of deference the letter warrants as an interpretation of the regulations and statute which have general applicability. See *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 172, 127 S.Ct. 2339, 168 L.Ed.2d 54

(2007) (finding that the DOL's intention regarding the applicability of a particular regulation was relevant to a determination of the deference owed by the courts).[4]

The Administrator did not make clear which facts he found dispositive of this issue in the opinion letter, however several facts distinguish the school district's tuition benefit from the tuition benefit that section 531.32(a) of the regulations requires be included in the regular rate. In particular, the Administrator explicitly found that the school district's tuition program conferred "mutual benefit" upon the employer in addition to the employee. Op. Letter, 1994 WL 1004844. He, perhaps, appears to focus on whether the payment is provided as remuneration in exchange for employee work or for reimbursement for education obtained for the purpose of the employers' benefit. This logic may explain the Administrator's reliance on Subsection 207(e)(2), which excludes "reasonable payments for ... expenses incurred by an employee in the furtherance of his employer's interests ...; and other similar payments to an employee which are not made as compensation for his hours of employment." 29 U.S.C. 207(e)(2). No such benefit to the employer is specified in 29 C.F.R. § 531.32(a), which addresses the rate of pay for a college's student employees.

Furthermore, the Administrator's conclusion that the payments benefit the school district may be based on the employer's restrictions on the type of course work reimbursed, the fact that most of the reimbursed courses are related to the employees' work, and the fact such course work includes "workshops, seminars, etc., taken through the Department of Edu-

---

4. Notably, the Department has since abandoned the practice of issuing these limited opinion letters, in favor of providing general interpretations of the regulations when war-

ranted. See United States Department of Labor, Wage and Hour Division, Final Rulings and Opinion Letters (Feb. 08, 2011) http://www.dol.gov/whd/opinion/opinion.htm.

cation and the Curriculum Council." Op. Letter, 1994 WL 1004844 (ellipses omitted).

Ultimately, however, the court must interpret the letter so that it does not conflict with *Local 246*, the FLSA, and its regulations. To the extent it does conflict with the Ninth Circuit's interpretation of Subsection (e)(2) or the regulations, it is clearly erroneous. For this reason, the court concludes that the letter bears little weight on determination of whether UOP's tuition benefit is excludable from the regular rate of pay. One cannot determine whether the school district's program applied, in practice or by its own terms, to tailored training programs or to general education programs. This distinction is determinative as to whether a tuition payment program is compensation for work versus reimbursement for enrollment in a program that primarily benefits the employer.

The DOL regulations support this distinction and the conclusion that at least some tuition reimbursement programs must be included in the regular rate of pay. As discussed above, the FLSA authorizes only the narrowly construed, enumerated exceptions of Section 207(e). *Cleveland v. City of Los Angeles*, 420 F.3d at 988. Section 778.217 of the regulations explains that, Subsection (e)(2) permits exclusion of certain expenses incurred for the convenience of the employer. Examples include "supper money" for a day shift employee when the employer requests that he or she continue working into the evening, and expenses for traveling "over the road" on the employer's business. 29 C.F.R. § 778.217(b). However, reimbursement for expenses that are normally incurred by the employee "of course, increas[e] the employee's pay," and must be included in the regular rate. 29 C.F.R. § 778.217(b), (d). These included payments include those which arguably confer benefit on the employer under some circumstances, such as "traveling to and from work," and "buying lunch." 29 C.F.R. § 778.217(d).

■ Thus, tuition payments for course work that primarily or exclusively benefits the employer is excludable as an "other similar payment." However, tuition payments for course work that the employee would normally incur or which are primarily for the benefit or convenience of the employee must be included in the regular rate of pay. The DOL letter does not provide sufficient information from which the court can determine where the agency draws the line between a payment that primarily benefits the employer versus one that primarily benefits the employee. Without further information about the administration of the tuition benefit at issue in the DOL letter, the letter can provide only minimal guidance as to how courts should evaluate whether a particular tuition benefit must be included in the regular rate of pay. Suffice to say, the language of the letter does not contradict this court's understanding of the statute and regulations at issue in the instant case. The proper test for determining whether a payment must be included in the regular rate is whether such a payment is compensation for work. One determines whether a payment is compensation for work by considering whether the benefit primarily benefits the employee or the employer.

### 4. Application

The question under Subsection (e)(2) is whether UOP's tuition benefit constitutes compensation for work or whether it is an expense incurred on behalf of the employer. For the reasons described above, a tuition benefit is not compensation for work, and may thus be excluded from the regular rate of pay, where it primarily benefits the employer. Here, employees

may not utilize the tuition benefit unless they receive a score of 100% or greater on a certain computer based training course and have not received any written warnings or disciplinary actions. Defendants admit that they regard the program as a privilege and benefit to the employees. *See Id.* Ex. 1. at 3; Defendants' Motion, Doc. No. 113, at 1 (Jan. 14, 2011). This admission does not, however, resolve the dispute. Rather, the court must examine UOP's program to determine whether it primarily benefits the employer or the employee. As discussed above, UOP's program gives ECs and their dependants credit to enroll in UOP and other Apollo courses without any restrictions on the courses selected. It also will reimburse coursework taken at external institutions by the ECs only, but such reimbursement is subject to several conditions. The court separately discusses each program.

### a. Internal Program

■ The essential elements of the internal program are as follows: (1) ECs are given a 100% credit to take any courses offered by UOP and other Apollo entities and (2) dependents of ECs are given a 80% credit to take any courses offered by UOP and other Apollo entities. UOP argues that this policy benefits them because the ECs will be able to better communicate to potential students about the classes it offers. It seems quite clear that UOP derives little, if any, benefit from the credit provided to the dependants of ECs. Defendants have not provided any evidence to the contrary. Thus, this element of the internal program primarily benefits the employee, and is not excludable from the regular rate of pay under Subsection (e)(2).

■ The credit provided to ECs is a more difficult question. UOP does derive some benefit from the program in that its counselors may be better able to provide information to students if they are also taking courses with the university. The question, however, is whether the program primarily benefits the employer or the employee. Both defendants' admission that they regard the program as a benefit of employment and that UOP requires that the employees meet certain performance-based thresholds before they can utilize the program does suggest that the benefit primarily benefits the employee. Further, through the program, employees can earn credits towards a degree, take courses in any subject area, and potentially, increase their earning potential by doing so. Ultimately, the benefit to the employee appears to outweigh that to the employer and, thus, the internal benefit is not excludable from the regular rate of pay.

It is important to note that this finding is consistent with the policies underlying the FLSA. The regular rate must include all remuneration unless specifically exempted. 29 U.S.C. § 207(e). Exemptions to employers' responsibilities under the FLSA are narrowly construed so that employees are reimbursed for their work. *Cleveland v. City of Los Angeles*, 420 F.3d at 988. If the court were to adopt defendants' interpretation of "other similar payments," employers would be able to avoid including nearly any benefit from the regular rate of pay. Specifically, employers generally receive some advantage from any benefit that they offer their employees. This advantage could be morale, retention, ability to pay a lower monetary wage, or, like here, potential improvement in quality of employee work. In fact, the court suspects that an employer could always come up with an explanation as to why an employee benefit actually benefits the employer. Thereby, allowing employers to exclude any benefit from the regular rate of pay if such benefit also benefits the employer would swallow the rule. No specific exemptions would be necessary be-

cause everything would be exempted. For this reason, the focus of the court's analysis must be whether the employer or the employee **primarily** benefits from the tuition program.[5]

### b. External Program

 The court is presented with only minimal evidence concerning the external tuition benefit. Specifically, ECs may only receive tuition reimbursement for course work taken at non-Apollo institutions where the course is not offered by any Apollo subsidiary, will improve the employee's current job/professional responsibilities, and is approved by the president of Apollo. Neither party has presented any evidence as to how this program is implemented or what standards are used to determine whether a course will improve any employee's job/professional responsibilities and by the president of Apollo. Under these circumstances, the court cannot make a determination as to whether the external benefit primarily benefits the employer or the employee. Thus, both motions are denied as to the external benefit.[6]

### D. Whether the Internal Tuition Payments Should Nonetheless Be Excluded as De Minimus

 Defendant argues that even if the tuition benefit is not excluded as an "other similar payment," it must nonetheless be excluded as de minimus. 29 C.F.R. § 548.305 permits an employer to exclude "additional payments in cash or kind, which if included in the computation of overtime under the Act, would not increase the total compensation of the employee by more than 50 cents a week." The cost applicable to payments in the form of goods or facilities, under 29 C.F.R. § 778.116, is the "reasonable cost to the employer or fair value of such goods." Defendant argues that the cost of the tuition benefit is de minimus because UOP would offer the classes in which the ECs enrolled regardless of whether the benefit were in place. Thus, they contend, that the cost of the program is insignificant and, under § 548.305, excludable from the regular rate of pay.

In order to calculate the reasonable cost, the court must calculate the cost of operation, maintenance, and the rate of depreciation under good accounting practices. 29

---

**5.** Defendants also argue that the tuition benefit should be excludable because it is similar to a health insurance benefit, which is excludable from the regular rate of pay. While the tuition benefit may be similar to the health insurance benefit, any such similarities actually weigh in favor of inclusion of the tuition benefit in the regular rate of pay. Subsection (e)(4) of the statute explicitly provides that employers may exclude health insurance benefits and other such insurance benefits from the regular rate of pay. This explicit exemption strongly suggests that absent the exemption, health insurance benefits would be included and would not constitute a similar payment under Subsection (e)(2). Further, the regulations interpreting Subsection (e)(4) prevent inclusion of the tuition benefit under the Subsection. In 29 C.F.R. § 778.215, the DOL limits inclusion under the section to benefit plans whose "primary purpose ...

must be to provide systematically for the payment of benefits to employees on account of death, disability, advanced age, retirement, illness, medical expenses, hospitalization, and the like." Tuition reimbursement simply is not like these other sorts of benefits.

**6.** It appears to the court that few if any class members would ever have had an opportunity to utilize the external tuition benefit. UOP offers a vast number of courses, making it unlikely that a course would not be offered at an Apollo institution. This seems to be especially so for courses that will benefit an EC's job performance. For this reason, it may be that this court will not need to determine whether the external benefit need be included in the regular rate. This question may likely be resolved by an interrogatory on whether any class members utilized the external program.

C.F.R. § 531.3. If this amount is more than the fair value of the commodity, the value is its fair value. The only evidence defendants submit on this issue is a declaration from an Apollo Group curriculum/advertising accounting manager, in which he testifies that UOP's operational costs are fixed and would have been incurred whether or not the class members enrolled in courses through their tuition benefit. He further declares that the total cost to UOP for Abbaszadeh's three courses was $54.37 in electronic course content. Abbaszadeh had paid a $45 fee for such material in each of her courses, and thus, UOP incurred no costs for her classes. Additionally, the accounting manager represented that Abbaszadeh's experiences were common among ECs utilizing the tuition benefit.

In response, plaintiffs argue that defendants' evidence is insufficient. Plaintiffs contend that the DOL regulations preclude a finding that tuition benefits are di minimus. Specifically, plaintiffs maintain that the regulation requiring "tuition furnished by a college to its student employees" to be included in their regular rate of pay would be meaningless if each college could then turn around and argue that such benefits are di minimus. Such is not the case. Rather, a fact specific inquiry is necessary to determine if the cost to the employer is di minimus. For example, in addition to the varying costs of lab equipment, limited seats, and course material, many universities and colleges spend far more funds on a student's education than they charge in tuition. Thus, UOP's di minimus argument is not in conflict with the regulations.

Alternatively, plaintiffs have filed a Rule 56(f) motion, which was incorrectly identified as a Rule 56(d) motion, in which they contend that further discovery is necessary before they can adequately oppose defendants' motion on this ground. The court finds that plaintiffs are entitled to discovery on the reasonable costs incurred by defendants from the internal tuition benefit on a class-wide basis. All relevant information is in the possession of the defendants and plaintiffs have no meaningful way to oppose defendants' motion on this ground. Thus, both motions for summary judgment are denied without prejudice and plaintiffs' Rule 56(f) motion is granted as to allow discovery of the costs of the internal tuition benefit.

## IV. CONCLUSION

For the foregoing reasons the court HEREBY ORDERS as follows:

(1) Plaintiffs' Rule 56(f) motion (Doc. No. 115) is GRANTED as to allow discovery of the reasonable cost of the ECs' tuition benefit when utilized through defendants' internal educational programs.

(2) Both motions for summary judgment (Doc. Nos. 112, 113) are DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.